IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KRISTI TAYLOR and HEATH TAYLOR, individually, and as next friends of T.T., a minor, | )<br>)<br>)<br>) |
| Plaintiffs, | )    CASE NO. 3:14-CV-188-WKW |
| | )                [WO] |
| v. | )<br>) |
| PEZOLD MANAGEMENT ASSOCIATES, INC., d/b/a MCDONALD'S # 31329, and SANI-PLAY, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kristi and Heath Taylor filed suit individually and on behalf of their minor son, T.T., in the Circuit Court of Russell County, Alabama, on March 13, 2013. Plaintiffs allege that Defendants Pezold Management Associates, Inc. ("Pezold") and Sani-Play, Inc. ("Sani-Play") failed to warn of unsafe conditions and negligently and/or wantonly inspected and maintained the McDonald's Play Place located in Phenix City, Alabama, and that T.T. was injured as a result. After removing the case to this court, Defendants filed motions for summary judgment (Docs. # 15 & 17), which Plaintiffs opposed (Docs. # 19 & 20). After careful review of the arguments, evidence, and relevant law, the court finds that Sani-Play's motion

for summary judgment is due to be granted, while Pezold's motion for summary judgment is due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, the movant can assert, without citing to the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.

*Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III.  BACKGROUND

The evidence, construed in the light most favorable to Plaintiffs, establishes the following facts.

On March 16, 2011, Mr. Taylor and his son T.T. went to the Phenix City McDonald's for dinner. They chose a table inside the main dining area near the entrance to the restaurant's attached Play Place. After finishing his meal, T.T. took his shoes off and joined the ten or so other children playing in and around the indoor Play Place.

Mr. Taylor continued to eat his meal and check email while his son played. After several minutes, Mr. Taylor looked up to the sound of his son screaming. Mr. Taylor then saw his son exit the Play Place's tubular slide on his stomach; he was still screaming. Immediately upon exiting the slide, T.T. ran over to his father complaining that his "pee-pee hurt." (Compl. at 1.)

Mr. Taylor examined the area where T.T. said he was hurting and discovered that his son's skin had been ripped just below the penis. Mr. Taylor noted that his son's penis "looked like" it was about to "fall off." (Compl. at 1.) After seeing the

injury, Mr. Taylor carefully picked up his son and rushed him to the hospital. The emergency room doctor gave T.T. localized anesthesia and then used glue to piece T.T.'s skin back together.

Because T.T. was four years old and only able to indicate that he had been hurt on the slide, Mr. Taylor returned to the restaurant to inspect the Play Place and try to determine exactly how T.T. had been injured. Mr. Taylor, the Sherriff of Russell County, Alabama, at the time of the incident, solicited the help of a Russell County Sherriff's Department investigator and some officers from the Phenix City Police Department to aid in the inspection.

Upon arriving back at the McDonald's, Mr. Taylor notified the manager-on-duty, Tony Williams, of his son's earlier injury and sought his assistance in clearing and inspecting the Play Place. Mr. Williams was not aware of any problems with the Play Place and informed Mr. Taylor that no other customers had complained of or been injured on the slide prior to T.T. Mr. Williams also told Mr. Taylor that his employees inspected the Play Place on a daily basis, including the present day and had found no problems or concerns. Lastly, Mr. Williams showed Mr. Taylor a written report produced by an outside contractor of Pezold's, which showed that the Play Place had been recently inspected without issue.[1]

---

[1] Pezold contracted with two different companies for the maintenance and sanitization of the Play Place – EcoSure and Sani-Play. EcoSure was tasked with performing regular Play Place safety evaluations, while Sani-Play visited the McDonald's to perform regular Play Place

During the inspection of the Play Place, Mr. Taylor – and those assisting on his behalf – discovered that a bolt on the slide had come out of place. They found that the bolt's nut was missing, which allowed the bolt to move upward into the slide. Mr. Taylor estimated that the bolt protruded into the interior of the slide approximately a quarter of an inch. Other than the missing nut and protruding bolt, the inspectors did not find any problems with the Play Place.

After the injury, T.T. complained of pain for several months. His parents also noticed that he was prone to subconsciously guarding his penis when he was out in public for the year following the accident. At present, the Taylors are unsure of the lasting effects of T.T.'s injury. T.T.'s doctors have warned that the main concern will be the amount of scar tissue that may build up around T.T.'s penis. The doctors have explained to them that the full extent of the damage will not be fully apparent until T.T. reaches puberty.

## IV.  DISCUSSION

**A.**   **Pezold's Motion for Summary Judgment**

Pezold asserts that it is entitled to summary judgment as to all of the Taylors' claims for two reasons: (1) that Plaintiffs' theory of T.T.'s injury is too speculative,

---

cleanings. A dated Play Place Evaluation form indicates that an EcoSure employee inspected the Play Place March 6, 2011, just ten days before T.T.'s injury. (Doc. # 16-3.)  Similarly, records indicate that Sani-Play provide Play Place cleaning services on March 11, 2011, just five days prior to T.T.'s injury. (Doc. # 20, at 3.)

and (2) that Pezold had no actual or constructive knowledge of the alleged defect. Pezold also specifically challenges the Taylors' wantonness claim, asserting that they failed to produce any evidence showing that Pezold committed any conscious or intentional act, knowing that injury was likely to occur. Finally, Pezold argues that summary judgment is appropriate on all claims asserted by the Taylors individually because they also asserted all claims on behalf of T.T.

### 1.     *Whether the Taylors' Claims Are Too Speculative*

For plaintiffs to "establish negligence in a premises-liability case under Alabama law, [they] must establish 'duty, breach of duty, cause in fact, proximate or legal cause, and damages.'" *Giles v. Winn-Dixie Montgomery, LLC*, 574 F. App'x 892, 894 (11th Cir. 2014) (quoting *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000)). "The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition." *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala. 2003) (internal quotation marks, brackets, and citations omitted). As the Alabama Supreme Court has repeatedly noted, "'The storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition.'" *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 101 (Ala. 2003) (quoting *Cash v. Winn-Dixie of Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982)).

In support of its motion for summary judgment, Pezold argues that the Taylors have failed to raise a genuine dispute of material fact on one of the essential elements of their claim, namely that the protruding bolt caused T.T.'s injuries. Pezold argues that the Taylors are speculating at best when they contend that T.T. was injured as a result of the exposed bolt. Additionally, Pezold offers other possible explanations for T.T.'s injuries, such as an inverted pants' zipper or the rough housing of another child. Pezold also notes that the Taylors did not provide any expert testimony to support their theory that the protruding bolt caused T.T's injuries, which Pezold argues only adds to the speculative nature of the Taylors' causation theory.

A plaintiff's speculation as to the cause of an accident is "insufficient evidence to overcome a summary judgment motion." *Giles*, 574 F. App'x at 894; *see also Ex parte Harold L. Martin Distrib. Co.*, 769 So. 3d 313, 315 (Ala. 2000). As the Alabama Supreme Court has explained, holding defendants liable in cases of mere speculation "would render premises owners virtual insurers of others' safety and would impose liability that is nearly absolute." *Ex parte Harold L. Martin Distributing*, 769 So. 3d at 316. Accordingly, the Alabama Supreme Court upheld the grant of summary judgment in favor of a premises owner in *Ex parte Harold L. Martin*, where the plaintiff failed to submit evidence showing that the technical deficiencies of a wheelchair ramp caused her fall. *Id*. at 315–16. Similarly, in *Burlington Coat Factory of Ala., LLC v. Butler*, No. 2120969, 2014 WL 2619848,

at *7 (Ala. Civ. App. June 13, 2014), an Alabama court determined that speculative nature of the evidence required summary judgment on a plaintiff's negligence claim because the plaintiff failed to produce any evidence indicating that the moveable metal brackets she alleged caused her injury were defective or not properly installed. *Id*. at *7–8.

The Taylors' claims present important differences from those Alabama cases finding speculation on the part of plaintiffs. Specifically, the Taylors' claims against Pezold do not rely on mere speculation as to the cause of T.T.'s injuries, but rather rely on evidence upon which a "reasonable inference" may be drawn that the protruding bolt caused T.T.'s injuries. *See Cook v. Wal-Mart Stores, Inc*., 795 F. Supp. 2d 1269, 1274–75 (M.D. Ala. 2011) (distinguishing mere speculation from evidence upon which a reasonable inference may be drawn to create a genuine dispute as to a material fact). The Taylors have put forth evidence that T.T.'s front was injured while he was lying on his stomach inside the tubular slide and that a bolt – which was missing a nut and no longer secured in place – protruded a quarter of an inch from the surface of the slide. And while the Taylors did not put forth expert testimony establishing that a bolt protruding a quarter of an inch from the surface of a slide could cause the skin below a boy's abdomen to tear, such a determination would not require scientific or technical knowledge of an expert. Ultimately, the evidence put forth by the Taylors is sufficient to establish a genuine issue of material

fact about whether the protruding bolt caused T.T.'s injuries, making summary judgment inappropriate.

### 2. *Pezold's Knowledge of the Alleged Defect*

Pezold next argues that summary judgment is warranted on the Taylors' claims because Pezold did not have actual or constructive notice of any alleged defect with the Play Place. Because a premises owner is not the insurer of his invitee's safety, it is generally the case that "an invitee must show not only that he was injured as a result of a defective condition on the owner's premises, but also that the owner knew or should have known of the defective condition." *Miller ex rel. Miller v. Liberty Park Joint Venture, LLC*, 84 So. 3d 88, 91 (Ala. Civ. App. 2011) (quoting *Edwards v. Intergraph Servs. Co.*, 4 So. 3d 495, 502 (Ala. Civ. App. 2008)). As the Taylors correctly highlighted, however, the requirement that a plaintiff produce evidence showing the premises owner's knowledge is lifted in special circumstances. *Id.* ("[A] showing of actual or constructive knowledge is not required at the summary judgment stage in some special circumstances.").

As the Alabama Supreme Court explained in *Mims v. Jack's Restaurant*, 565 So. 2d 609, 610 (Ala. 1990), when "the alleged defect is a part of the premises . . . once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff

9

makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident." In *Mims*, the plaintiff had tripped over the metal threshold of a restaurant's entrance, and it was discovered that screws were missing from the threshold, allowing the metal threshold to come loose at the time of the accident. *Id*. Accordingly, the Alabama Supreme Court determined that because the threshold was part of the restaurant's actual premises, the question of whether the restaurant "should have known that the threshold was defective was a question for the jury." *Id*. at 611.

The protruding bolt in this case is sufficiently analogous to the loose threshold in *Mims* to make summary judgment inappropriate. The Taylors have produced evidence that the bolt was not properly secured because it no longer had a nut holding it in place. They also showed that as a result, the bolt had come to protrude into the interior surface of the tubular slide, producing a potentially hazardous condition within the McDonald's Play Place.[2] Because the Play Place is part of the McDonald's premises, the question of whether Pezold should have known about the protruding bolt is a question for the jury.

---

[2] Pezold asserts that the protruding bolt should not be deemed a defect for purposes of Alabama law because there have not been any prior injuries on the slide despite it being in place since 2005. (Doc. # 17, at 5.) This argument is without merit, however, because Pezold is not maintaining that the bolt has protruded into the slide since its initial installation.

10

### 3. *The Taylors' Wantonness Claim*

Pezold also specifically challenges the Taylors' claims alleging wantonness, arguing that there is no evidence that Pezold committed any conscious or intentional act, knowing that injury would likely occur. The Alabama Supreme Court has explained the difference between negligence and wantonness claims:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . .
>
> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious intentional act.

*Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996) (quoting *McNeil v. Munson S.S. Lines*, 63 So. 992 (Ala. 1913)).

While the Taylors have presented sufficient evidence to make out a prima facie case of negligence, they have not presented sufficient evidence to establish a claim of wantonness on the part of Pezold. The Taylors did not produce any evidence from which a reasonable juror could find an intentional act on the part of Pezold or its employees, nor have the Taylors produced evidence that Pezold or its employees acted recklessly with regard to the upkeep of the Play Place. In fact, evidence shows that Pezold hired an independent contractor to regularly evaluate the

condition of its Play Place and tasked the McDonald's employees with performing daily inspections. While failure to discover the protruding bolt despite these efforts may constitute negligence, on this record, that failure does not establish wantonness on the part of Pezold. Accordingly, Pezold's motion for summary judgment on the Taylors' claims of wantonness is due to be granted.

### 4. *The Taylors' Right to Recover Damages*

Lastly, Pezold argues that it is entitled to summary judgment on all claims asserted by the Taylors individually because they waived the right to such recovery when they asserted claims on behalf of T.T. Alabama case law makes clear that "when a parent, as next friend, brings an action for the entire injury or permits the child to recover for lost wages and medical expenses[,] the parent waives his right to maintain a separate action for these damages." *Blue Cross & Blue Shield of Ala. v. Bolding by Bolding*, 465 So. 2d 409, 412 (Ala. Civ. App. 1984). The Taylors do not rebut this principle and have not provided any argument in opposition to Pezold's assertion that it is entitled to summary judgment on the claims alleged on behalf of the Taylors individually. Additionally, the Taylors have asserted that they are no longer making a claim for any lost wages. (Doc. # 17, Ex. D.) Accordingly, Pezold's motion for summary judgment on the claims brought on behalf of the Taylors individually is due to be granted.

**B.     Sani-Play's Motion for Summary Judgment**

Sani-Play is the Florida-based company that contracted with Pezold to provide cleaning services for the McDonald's Play Place.  An independent contractor of Sani-Play, Bryan Watt, visited the McDonald's on March 11, 2011 – five days before T.T. was injured – and performed a full Play Place cleaning.  At no point did Sani-Play ever contract with Pezold to perform safety inspections or repair and maintenance visits.  In fact, the record shows that Pezold hired a different company, EcoSure, for the performance of regular Play Place safety evaluations.

In light of these facts, it is clear that the Taylors have failed to establish a prima facie case of negligence or wantonness against Sani-Play.  Because Sani-Play did not undertake a duty to inspect the Play Place for safety and only contracted with Pezold for cleaning services, as a matter of law Sani-Play cannot be held legally responsible for T.T.'s injuries allegedly stemming from the protruding bolt.  Accordingly, Sani-Play is entitled to summary judgment in its favor on all of the Taylors' claims.

## V. CONCLUSION

Based on the foregoing analysis, it is ORDERED as follows:

1.     Pezold Management Associates, Inc.'s Motion for Summary Judgment (Doc. # 17) is GRANTED as to the Taylors' claims for wantonly failing to warn,

wantonly failing to properly inspect, repair, clean and/or maintain, and wantonly allowing a loose bolt to protrude into the Play Place slide.

    2.    Pezold Management Associates, Inc.'s Motion for Summary Judgment (Doc. # 17) is GRANTED as to the claims brought on behalf of the Taylors individually.

    3.    Pezold Management Associates, Inc.'s Motion for Summary Judgment (Doc. # 17) is DENIED in all other respects.

    4.    Sani-Play, Inc.'s Motion for Summary Judgment (Doc. # 15) is GRANTED.

DONE this 3rd day of March, 2015.

                                      /s/ W. Keith Watkins
                            CHIEF UNITED STATES DISTRICT JUDGE